**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**WEST PALM BEACH DIVISION**

**E.H., by and through his natural parents,**
**A.S.H. and C.H.,**                                     **Case No.**:

     **Plaintiff,**

**v.**

**THE SCHOOL BOARD OF PALM**
**BEACH COUNTY, FLORIDA,**

     **Defendant.**

_____/

## COMPLAINT

E.H., by and through his natural parents, A.S.H. & C.H., ("Plaintiff") hereby files this complaint against The School Board of Palm Beach County, Florida ("Defendant" or "district"), seeking judicial review and challenging a Final Order issued by the Florida Division of Administrative Hearings ("DOAH"), and states as follows:

### Introduction

1. This is a claim under the Rehabilitation Act of 1973, 29 U.S.C. § 795, *et seq.* (Section 504) and Rule 6A-6.03311(9)(w), Florida Administrative Code. Through this claim, Plaintiff seeks to challenge

and have this Court reverse the Final Order entered on April 15, 2026, by Administrative Law Judge ("ALJ") Jessica E. Varn in DOAH Case No. 26-0631ERA.

## Jurisdiction

2. This Court has jurisdiction pursuant to Section 504, 29 U.S.C. § 794, and 34 C.F.R. §§ 104.35-36.

3. In seeking to challenge and vacate and/or reverse the Final Order, Plaintiff is a party "aggrieved by the findings and decision" of a due process hearing officer within the meaning of the IDEA. 20 U.S.C. §1415(i)(2)(A).

## The Parties

4. Plaintiff, E.H., at all times material, was a minor child and a student enrolled in the School District of Palm Beach County, Florida.

5. Plaintiff, A.S.H., is the parent and natural guardian of E.H., a minor disabled child.

6. Plaintiff, C.H., is the parent and natural guardian of E.H., a minor disabled child.

7. Defendant, The School Board of Palm Beach County, Florida, is a corporate body and governmental agency, duly empowered by the Constitution and statutes of the State of Florida to administer, manage and operate the public schools of Palm Beach County, Florida.

8. The district receives state and federal funding for the education of children with disabilities.

9. The district meets the definition of a public entity under 42 U.S.C. section 12131.

### General Allegations

10. E.H. resides in Palm Beach County, Florida, within the boundaries of Palm Beach County Public Schools.

11. E.H. is 17 years old. He just completed the eleventh grade and is applying for college and planning for what comes next after high school.

12. E.H. has been recognized by the district as a student with a disability and in need of support and accommodations through a 504 plan.

13. E.H. is also a talented musician and attended A.W. Dreyfoos School of the Arts for three years, until he was "exited" from the magnet/choice program in December 2025.

14. At all relevant times, E.H. was eligible for protections under Section 504 because of attention-deficit/hyperactivity disorder ("ADHD") and generalized anxiety disorder and had an active Section 504 plan.

15. On February 3, 2026, Plaintiff requested an impartial due process hearing challenging the School Board's manifestation determination. The matter was transmitted to DOAH and assigned Case No. 26-0631ERA.

16. The School Board elected to use the procedural rules governing expedited disciplinary hearings under the Individuals with Disabilities Education Act for the Section 504 hearing. The hearing began on March 2, 2026, and continued on March 30 and 31, 2026, before Administrative Law Judge Jessica E. Varn.

17. The administrative hearing addressed whether the conduct for which E.H. was disciplined was a manifestation of his disabilities.

18. Plaintiff also presented evidence and argument that the process was predetermined and that the sequence and operation of the exit and manifestation proceedings were unlawful.

19. On April 15, 2026, the ALJ entered the Final Order denying all relief. See final order attached hereto as Exhibit A.

20. This action is filed on July 14, 2026, within 90 days of the Final Order, and is timely under 20 U.S.C. § 1415(i)(2)(B) and the Notice of Right to Judicial Review contained in the Final Order.

21. Plaintiff is aggrieved by the findings and decision in the Final Order and has exhausted the administrative process available for the issues decided in that proceeding.

## FACTUAL ALLEGATIONS

### E.H.'s Disabilities and Educational Program

22. Before the disciplinary incident, E.H. attended Dreyfoos, a public, audition-based performing-arts magnet high school serving artistically talented students. E.H. successfully auditioned for admission as a trumpet student and had participated for more than two years in Dreyfoos's specialized band and music program while taking advanced academic courses.

23. E.H.'s Section 504 plan identified ADHD and generalized anxiety disorder. It included accommodations addressing distractibility, task initiation, sustained attention, redirection, segmentation of large assignments, additional time, and breaks.

24. The administrative record contained evidence that E.H.'s disabilities affected executive functioning, inhibition, judgment, self-regulation, coping, and decision-making. The record also contained contemporaneous school observations that he could act without thinking, become distracted, and require repeated redirection.

### The November 2025 Incident and Exit Committee Decision

25. On November 14, 2025, school personnel found two vaping devices in E.H.'s eyeglass case on the Dreyfoos campus. One device contained nicotine and the

other contained tetrahydrocannabinol ("THC"). E.H. ultimately acknowledged possession of the devices.

26. The charged conduct adjudicated in the administrative proceeding was possession. The ALJ limited the hearing to the possession offense. There was never an allegation of drug use.

27. E.H. received a five-day out of school suspension.

28. In direct violation of its own policies and procedures, the district held an exit meeting before a manifestation determination review hearing.

29. On November 19, 2025, Dreyfoos convened an Exit Committee meeting for the purpose of deciding whether E.H. should be exited from Dreyfoos – a choice program - and returned to his home high school. The committee included voting and non-voting participants. After receiving information and deliberating, the voting members voted that E.H. should be exited from Dreyfoos and returned to his home school.

30. Because E.H. had an active Section 504 plan, the School Board was required to hold a manifestation meeting before the exit meeting, and to circumvent this rule, the district stated that the decision to exit E.H. was being held in abeyance pending the completion of the manifestation determination hearing.

31. In this case, the Exit Committee reached and voted on a decision before the Manifestation Determination Review meeting (MDR), that implementation

was held in abeyance pending the MDR, and that after the MDR there was no renewed deliberation or vote before that previously reached decision was implemented.

32. Also, before the manifestation determination occurred, the School Board stipulated that E.H.'s name was removed from the Dreyfoos PRISM program materials at some point between the November 14 incident and the December 1 manifestation meeting. This is direct evidence that the decision to exit the student had already been made (i.e. it was predetermined) no matter the outcome of the manifestation hearing.

**The Manifestation Determination Review Hearing**

33. The manifestation determination review hearing occurred on December 1, 2025, after the Exit Committee had already voted that E.H. should be exited from Dreyfoos. The meeting included E.H., his parents, private counsel, school board counsel, school personnel, the school psychologist, and E.H.'s treating psychiatric provider, Dr. Rocklage wo attended only the first 30 minutes of the meeting.

34. Dr. Rocklage explained that E.H.'s ADHD and anxiety interacted in a negative feedback loop and impaired executive functioning, impulse control, judgment, coping, and decision-making. He opined that those impairments directly contributed to the conduct.

35. His opinions were dismissed and instead, the opinion of Dr. Kerzner, a school psychologist who had not treated or clinically evaluated E.H. were relied upon to determined that the conduct was not a manifestation of the student's disabilities. Dr. Kerzner emphasized that E.H.'s possession reflected deliberate planning rather than disability-related impulsivity.

36. The district employees who attended the manifestation determination hearing concluded that the possession was not caused by and did not have a direct and substantial relationship to E.H.'s disabilities, over the objection of anyone who was not employed by the school district.

37. The district also improperly relied upon the information that was discovered during the exit meeting, rather than on the information that resulted in the discipline imposed.

38. Following that determination, the School Board did not reconvene the Exit Committee, reopen deliberations concerning whether E.H. should remain at Dreyfoos, receive further evidence on the exit question, or conduct another vote.

39. Instead, the School Board implemented the Exit Committee's previously reached decision and exited E.H. from the choice school program and enrolled E.H. at his home high school.

**Programmatic Consequences of Removal**

40. The transfer did not merely change the physical school building. It eliminated E.H.'s access to the audition-based, multi-year music program for which he had been admitted, including specialized band and trumpet instruction, ensembles, juries, performances, and an integrated arts-centered educational environment. It also eliminated E.H.'s access to higher level classes, curriculums and instruction.

41. The receiving home school did not offer an equivalent specialized music program and could not provide all components of E.H.'s existing academic schedule. E.H. was required to rely on Florida Virtual School for courses that were unavailable at the receiving school.

42. These programmatic consequences were relevant to whether the disciplinary action constituted a significant change in placement and whether the School Board was required to conduct a complete and genuinely open-minded Section 504 evaluation before imposing a change in placement.

**The Final Order**

43. The Final Order correctly quoted the statutory question whether the conduct "was caused by, or had a direct and substantial relationship to," the child's disability. 20 U.S.C. § 1415(k)(1)(E)(i)(I).

9

44. In applying that standard, however, the Final Order concluded that the conduct was not a manifestation because it was a "planned, multi-step process." The Order credited Dr. Kerzner's planning-based analysis over Dr. Rocklage's individualized opinion concerning executive functioning, judgment, coping, inhibition, and self-regulation.

45. The Final Order also rejected predetermination principally because the exit and manifestation meetings were lengthy, participants were permitted to speak, and school personnel testified that they considered the participants' views.

46. The Final Order did not separately determine whether the School Board complied with the full Section 504 evaluation requirements in 34 C.F.R. § 104.35, including careful consideration of varied sources by persons knowledgeable about the child, the evaluation data, and the available placement options, before implementing a significant programmatic change.

47. Plaintiff seeks review of the Final Order because the manifestation analysis applied an unduly narrow planning-versus-impulsivity framework, the legally required review was not genuinely independent and open-minded, and the decision failed to apply the full evaluation and placement protections required by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and 34 C.F.R. §§ 104.35-.36.

## COUNT I

## JUDICIAL REVIEW OF FINAL ADMINISTRATIVE ORDER
## (20.S.C. § 1415(i)(2); SECTION 504, 29 U.S.C. § 794)

48. Plaintiff realleges paragraphs 1 through 47 as if fully set forth herein.

49. Under 20 U.S.C. § 1415(i)(2)(C), the Court shall receive the administrative record, may hear additional evidence at a party's request, and shall decide the matter based on the preponderance of the evidence while granting appropriate relief. Legal and regulatory questions are reviewed de novo, with due weight afforded to supported administrative factual findings.

50. Section 504 requires an individualized evaluation before a significant change in placement. The evaluation must draw upon information from a variety of sources, ensure that the information is documented and carefully considered, and be conducted by persons knowledgeable about the child, the meaning of the evaluation data, and the placement options. 34 C.F.R. § 104.35(a), (c).

51. The Plaintiff submits that ALJ Varn erred and therefore seeks to challenge the findings of fact, conclusions of law and relief contained in the Final Order. Plaintiff asserts that the testimony, record evidence, and applicable law do not support the findings and conclusions set forth in the Final Order.

52. The Final Order should be reversed, vacated, or remanded because the manifestation determination and the administrative decision were affected by errors of law and mixed law and fact, including the following:

a) The ALJ functionally substituted a planning-versus-impulsivity test for the statutory inquiry into whether E.H.'s conduct was caused by, or had a direct and substantial relationship to, his disabilities.

b) The ALJ treated planning, repetition, concealment, and knowledge of school rules as substantially incompatible with manifestation, without adequately deciding whether disability-related executive dysfunction, impaired inhibition, judgment, coping, reward evaluation, and self-regulation had a direct and substantial relationship to the possession offense.

c) The ALJ's analysis converted a permissible evidentiary consideration—planning—into an effectively categorical limitation that does not appear in 20 U.S.C. § 1415(k)(1)(E).

d) The ALJ failed to apply the governing open-mindedness standard to the cumulative evidence of predetermination. Meaningful participation requires more than attendance and an opportunity to speak; the required decisionmakers must remain genuinely open to persuasion. See R.L. v. Miami-Dade County School Board, 757 F.3d 1173, 1188-90 (11th Cir. 2014).

e) The ALJ did not adequately address whether the Exit Committee's pre-MDR vote and decision, the removal of E.H.'s name from PRISM materials before the manifestation meeting, the carryover of personnel, information, and

conclusions from the exit process, the absence of any renewed deliberation or vote after the MDR, and the immediate implementation of the previously reached exit decision demonstrated that the legally required review was not genuinely independent and open-minded.

f)  The ALJ treated the two IDEA-style manifestation questions as the complete Section 504 analysis and did not separately determine whether the School Board satisfied 34 C.F.R. § 104.35 before implementing the disciplinary change.

g)  The ALJ did not adequately address whether the elimination of an audition-based specialized music curriculum and the substitution of virtual instruction for unavailable in-person courses constituted a transfer from one type of educational program to another rather than a mere change in physical location.

h)  The ALJ's legal errors materially affected the evaluation of the competing professional opinions, the assessment of the manifestation relationship, the determination of whether the process was predetermined, and the resulting removal from Dreyfoos.

53. Based on the administrative record and any additional evidence the Court permits, the preponderance of the evidence supports vacatur or reversal of the Final Order and remand for a new manifestation determination under the correct legal standard and through a genuinely independent Section 504 process.

54. Plaintiff has been aggrieved by the Final Order and is entitled to the relief requested below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A.   Accept jurisdiction over this timely action and receive the complete administrative record;

B.   Permit additional evidence to the extent necessary and appropriate under 20 U.S.C. § 1415(i)(2)(C)(ii);

C.   Declare that the Final Order applied an erroneous or incomplete legal framework to the manifestation and Section 504 process;

D.   Reverse or vacate the Final Order;

E.   Remand the matter for a new manifestation determination applying the correct direct-and-substantial-relationship standard and conducted through a genuinely independent, open-minded, and Section 504-compliant evaluation process;

F.   Award appropriate declaratory and equitable relief concerning the disciplinary placement action and the educational consequences of E.H.'s removal from Dreyfoos, including restoration or comparable educational relief if practicable and warranted;

G.   Award reasonable attorneys' fees and costs to the extent authorized by law; and

H.   Grant such other and further relief as the Court determines just and equitable.

14

Respectfully submitted this 14th day of July, 2026.

By:  s/_ *Stephanie Langer* _____
Stephanie Langer, Esq.
Florida Bar No. 149720
LANGER LAW, P.A.
450 State Road 13 North
Suite 106- Box 162
St. Johns, Florida 32259
Phone (305) 570-0940
Facsimile (305) 204-9602
slanger@langerlawpa.com
admin@langerlawpa.com